BENSON TIMBER CO. AND BENSON LUMBER CO., PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 16311, 19519. Promulgated December 15, 1927.

594

A. C. Shaw, Esq., for the petitioners.
George G. Witter, Esq., for the respondent.

598

OPINION.

Arundell: We have no hesitancy in reaching the conclusion that the purchase from Benson in the first instance was by Lynch on behalf of himself and his colleagues, Hanna, and Evenson, and was not a direct purchase by the Benson Timber Co. Both the option and the contract of sale ran to Lynch, and at the time of the exercise of the option and the execution of the contract of sale it had not even been definitely determined whether or not a corporation would be organized. Its subsequent organization and the transfer to it of the property for stock can not be related back so as to treat the transaction as one occurring directly between Benson and the Benson Timber Co.. In so holding the Commissioner erred.

With the preliminary question disposed of, our whole problem is in determining the value of the property paid in to the corporation for stock in June, 1911, and its value on March 1, 1913, for the purpose of determining the proper basis for allowing the Benson Timber Co. its depletion and depreciation granted by the statute. The value of the plant and equipment as of June, 1911, and as of March 1, 1913, has been agreed to in the amount found in the findings of fact and we think the evidence amply supports a value of $25,000 for the Westport mill site on these dates. Our real problem is to determine the value of the timber and of the land in the years 1911 and 1913. The record from which our conclusion has been drawn is voluminous and contains the testimony of men recognized as thoroughly qualified to place a value on the growing timber of the Northwest on the dates with which we are concerned.

There is a practical unanimity of opinion that the timber on this land, marketable in the Columbia River market, was in June, 1911, worth $3 per thousand feet and that the same timber at March 1, 1913, was worth $3.50 per thousand feet. If we are to give any credence whatever to the evidence, we must accept these values as established. Benson, who undoubtedly knew the timber better than anyone else, and who since 1911 has had no financial interest in the enterprise, was unequivocal in his testimony that the value in June, 1911, was $3 per thousand, and on March 1, 1913, $3.50 per thousand. The parties have stipulated the amount of timber on the land in 1911 and on March 1, 1913, and it would seem at first blush that the matter of determining the value would now be a mere mathematical calculation. The difficulty, however, arises from the fact that the persons testifying to values had not themselves cruised the timber and the stipulation as to the quantity of timber goes rather to the quantity on which depletion should be allowed and does not definitely state that

the quantity so stipulated is merchantable timber in the Columbia River market. The difficulty is made apparent from the testimony of Benson in which he gives as his opinion that the value in June, 1911, was $3 per thousand, but in making the sale he accepted the quantity of timber on the land as 700,000,000 feet. We have found, however, from the stipulated facts that there were 805,000,000 feet. The actual cutting experience, both prior to the sale of the timber by Benson and subsequent thereto, showed an overrun of some 15 per cent over the estimate on which Benson dealt and this quantity was corroborated by the check cruise made by Conyers for Lynch during the option period. It was made possible undoubtedly by the greater utilization incident to the shipment of the timber to the San Diego mill and to the fact that with the passage of time timber measuring less at the stump found an increasing market. Most of the witnesses who testified to the value of $3 and $3.50 a thousand feet of timber stated that such values were to be applied to the quantity of timber considered merchantable in the Columbia River market. From this it appears that the method of determining the value of a timber tract adopted by owners or purchasers of standing timber was to use a certain rate or value per thousand feet of timber and apply such rate to certain grades and sizes of timber in the tract, and thus arrive at a figure which represented the value of all of the timber in the tract. Since this method is used by the witnesses it is necessary to make a correction to the quantities of timber admitted to be on the property in 1911 to which these values apply.

Witness Evenson stated that from 5 to 10 per cent of the timber shipped from the property would be considered unmerchantable in the Columbia River market. It is also admitted by stipulation that a part of the 15 per cent overrun was due to the shipment of timber considered unmerchantable in the Columbia River market. In view of this testimony we believe that the quantities of timber of 805,330,571 feet in 1911 and 714,457,000 feet in 1913 should be reduced by 7½ per cent, the mean between the estimate of 5 per cent and 10 per cent, for the purpose of applying the $3 and $3.50 values, respectively, in arriving at the total values of the timber. This results in a value of timber in 1911 of $2,234,792.61 and in 1913 of $2,313,043.54. The unit rates based on the total quantities of timber on the property would be, in 1911, $2.775 a thousand and in 1913, $3.2375 a thousand.

The values ascribed to cut-over lands by the witnesses ranged from $8 to $15 an acre, and lands under timber were valued from practically nothing to $15 an acre. After a careful review of all of this testimony we are of the opinion that at June, 1911, and at March 1,

1913, the cut-over land other than the mill site, which has been valued separately, was worth $10 an acre and the land under timber was worth $6 an acre.

The value of the Benson Timber Co.'s property in 1911 and 1913 was as follows:

|  | 1911 | 1913 |
|---|---|---|
| Timber | $2,234,792.61 | $2,313,043.54 |
| Plant and equipment | 455,000.00 | 443,472.00 |
| Mill site | 25,000.00 | 25,000.00 |
| Cut-over land | 14,500.00 | 33,140.00 |
| Land under timber | 90,660.00 | 79,476.00 |
| Total | 2,819,952.61 | 2,894,131.54 |

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by Lansdon, Sternhagen, and Green.